U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 3 0 2009

TONY R. MOORE, CLERK
BY _____
            DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT HARVEY | CIVIL ACTION NO. 3:06-cv-02389 |
| -vs- | JUDGE DRELL |
| WAL-MART LOUISIANA L.L.C. | MAGISTRATE JUDGE KIRK |

# R U L I N G

Pending is the defendant's motion for summary judgment, seeking dismissal of the plaintiff's claims under (1) 29 U.S.C. § 2614 of the Family and Medical Leave Act ("FMLA"), (2) the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and (3) the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:323(B)(2), Louisiana's statutory parallel to the ADA.[1]

For the reasons described below, summary judgment with regard to the defendant's disability discrimination claims under federal and state law is inappropriate at this stage of the litigation. Therefore, the defendant's motion for summary judgment is **DENIED IN PART** as to the plaintiff's claims under the ADA and the LEDL as to whether or not the plaintiff was disabled with regard to the major life activities of lifting,

---

[1] The similarity between the ADA and the LEDL has been noted by the Fifth Circuit. Jenkins v. Cleco Power, LLC, 487 F.3d 309, 311 (5th Cir. 2007). The filings submitted by both parties cite cases related to and provisions of the ADA, and the Court in this ruling will do the same. Nonetheless, the arguments referenced in this opinion, and the Court's rulings with regard to the ADA, will apply equally to the LEDL claim as well.

bending, and standing. However, the Court notes its reservations in so ruling, as the plaintiff's claims of disability discrimination rest upon a very tenuous foundation.

The defendant's motion for summary judgment is **GRANTED IN PART** as to the plaintiff's claim under the FMLA, because the Court finds that there is no genuine issue of material fact as to whether the plaintiff was an "eligible employee" under the terms of that statute.

## I.    Background

The plaintiff, Robert Harvey ("Mr. Harvey"), was employed by the defendant, Wal-Mart Louisiana, L.L.C. ("Wal-Mart"), beginning in July 2002.[2] (Doc. 39-4, pp. 9-10). Initially, Mr. Harvey was an overnight maintenance worker at the Monroe, Louisiana Wal-Mart location. He later worked as a "people greeter" until he retired from Wal-Mart in April 2006.

Mr. Harvey suffered from degenerative arthritis in his lower back. In April 2003, Mr. Harvey was involved in a motor vehicle accident, which aggravated his pre-existing condition by, according to his treating physician, causing "a lumbar and cervical strain." (Doc. 44-8, p. 14).[3] The aggravation of his condition, and the resulting increase in pain, led Mr. Harvey to request a change in his employment role. (Doc. 39-4, pp. 10-11). Mr. Harvey's request was approved by his manager at the time, Scott Polk ("Mr. Polk"), and he was assigned to a new position as a greeter. Mr. Harvey also desired to take

---

[2] The Court is aware that the plaintiff also worked at another Wal-Mart location in Germantown, Tennessee, beginning in 2001. The details of his employment at that location are not relevant to this lawsuit.

[3] Mr. Harvey's medical condition will be discussed in more detail below.

short breaks from standing during his shifts, which caused him substantial pain in his back. Mr. Harvey was, however, informed that he would have to submit medical documentation to support his request for an accommodation. Shortly after the accident, Mr. Polk obtained a note from his treating orthopedist, who recommended that Mr. Harvey be allowed to sit while at work for 5 minutes each hour. Thereafter, Mr. Polk approved of this accommodation.[4]

Mr. Harvey's employment at Wal-Mart continued without incident until, in December 2004, he was asked to lift a heavy box. Mr. Harvey explained that he could not perform duties that required heavy lifting, and spoke with Mr. Polk about this issue. Mr. Polk requested that the plaintiff obtain another doctor's note which extended his physical restrictions to heavy lifting. Mr. Harvey once again visited his physician, and obtained a note which restricted him from lifting more than 25 pounds, bending, and standing for prolonged periods of time. Once again, Mr. Polk received the medical documentation, which was added to Mr. Harvey's personnel file, and approved of the accommodation. Despite Mr. Harvey's treatment and the accommodations provided to him by his supervisor, his condition continued to cause him significant pain.

Mr. Harvey took two leaves of absence in 2005, both of which are at issue in this case. The first leave of absence began on February 22, and ended on April 12. Mr. Harvey took this leave because he was experiencing a great deal of back pain, and he wanted to consider whether or not to undergo a surgery to attempt to correct the problem. Because no surgery had been ordered at that time, Mr. Harvey was unable to

---

[4] Again, the medical restrictions imposed upon Mr. Harvey as a result of his condition will be explored much further during the course of this opinion.

obtain a doctor's excuse for this leave. Thus, it was characterized as "personal" leave, instead of "medical" leave. He ultimately decided not to have the surgery, and returned to work as scheduled. The second leave of absence began on September 1, and was scheduled to end on November 19. Mr. Harvey requested to return to work twelve days early, on November 7, but this request was denied, and he was not allowed to return to work until December 13, 2005.

Mr. Harvey took this second leave of absence to care for his daughter, Paige Nettles, who was suffering from intracranial hypertension, which inhibited her ability to care for her two minor children. Ms. Nettles was approximately 38 years old at the time, and her condition improved more rapidly than expected. Upon returning to work, Mr. Harvey claims that he was told by his new supervisor, John Pryor ("Mr. Pryor") that he had exceeded the maximum amount of protected leave under federal law, and therefore, the company was not obligated to restore him to his former position. Mr. Harvey was not granted back pay for the time during which he had not been restored to his position as a greeter, a six-week period. This prompted the plaintiff to begin investigating Wal-Mart's leave policy and the provisions of the FMLA. He then contacted Mr. Pryor, asserting that he was entitled to back pay under the FMLA. Although Wal-Mart denied that he was entitled to any back pay, Mr. Pryor was able to restore Mr. Harvey to his previous position as a greeter.

Also after returning from his second leave of absence, Mr. Harvey began to experience some resistance from his new supervisor regarding his accommodation he believed he needed. Mr. Pryor required that Mr. Harvey return to a physician, update his

4

personnel file with new medical correspondence, and fill out Wal-Mart's "ADA Reasonable Accommodation Package" in order to be granted his desired accommodation. Instead of doing so, Mr. Harvey elected to retire in April 2006, claiming that he was no longer able to work with the severe back pain that he suffered from standing for long periods of time.

Mr. Harvey filed suit against Wal-Mart on November 3, 2006, in the 4th Judicial District Court for the Ouachita Parish, Louisiana. (Doc. 3). In this original petition, Mr. Harvey asserted that Wal-Mart's conduct violated the FMLA, the ADA, and the LEDL. Wal-Mart filed a notice of removal on December 20, 2006, relying both upon federal question and diversity jurisdiction. (Doc. 5).

Now before the Court is Wal-Mart's Motion for Summary Judgment, in which Wal-Mart argues:

(1)  as to Mr. Harvey's disability discrimination claim under the ADA, Mr. Harvey cannot satisfy his initial *prima facie* burden of proving that he was disabled at the time of the alleged discrimination;

(2)  as to Mr. Harvey's FMLA claim, Mr. Harvey (a) cannot prove that he met the statutory requirement of having worked a sufficient number of hours to be considered an "eligible employee," and (b) did not take his second leave of absence in 2005 for a reason protected by the FMLA; and

(3)  as to Mr. Harvey's state-law disability discrimination claim, the similarity between the provisions of the ADA and the LEDL implies that Mr. Harvey's state law claims should fail for the same reason given as to his federal claim.[5]

## II.   Law and Analysis

---

[5] Moreover, the defendant also claims Mr. Harvey has failed to establish that an adverse employment actions was taken against him, which is another essential element of the plaintiff's disability discrimination claim under federal and state law.

## A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), the Court will grant a party's motion for summary judgment only if:

> the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

In conducting this analysis, the Court must construe "all of the evidence and all of the factual inferences from the evidence . . . in a light most favorable to the party opposing the motion." Kling Realty Co., Inc. v. Chevron USA, Inc., 575 F.3d 510, 517 (5th Cir. 2009). Any doubts are likewise resolved in favor of the nonmoving party. U.S. ex rel. Longhi v. United States, 575 F.3d 458, 465 (5th Cir. 2009). Once the party seeking summary judgment has directed the Court's attention to portions of the record which reflect an absence of a genuine issue of material fact, the nonmoving party bears the burden of demonstrating that a genuine issue of material fact exists. Unitd States v. $92,203.00 in U. S. Currency, 537 F.3d 504, 506-07 (5th Cir. 2008). "However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996).

## B.    Governing Law Under the Disability Discrimination Claim

There is some dispute between the parties concerning the applicability of the ADA Amendments Act of 2008 ("ADAAA") to this case. Wal-Mart argues that the act was intended to apply prospectively only, and therefore, this dispute would be governed by the former, more restrictive interpretations of the ADA. Mr. Harvey maintains that the ADAAA (and its more lenient interpretations of the ADA) should be applied to this lawsuit, both because this action will be decided after the effective date of the statute, and because the language underpinning the statute indicates a congressional intent to correct erroneous interpretations of the ADA.

This argument can be settled quickly. The ADAAA became effective on January 1, 2009, and was intended, in the broadest sense, "[t]o restore the intent and protections of the Americans with Disabilities Act of 1990." Pub. L. No. 110-325, 122 Stat. 3553, 3559 (2008).[6] More narrowly, one of the stated purposes of the ADAAA that would perhaps have bearing on this case is to repudiate the "inappropriately high level of limitation necessary to obtain coverage under the ADA" which followed the United States Supreme Court's decision in Toyota Motor Manufacturing, Kentucky., Inc. v. Williams, 534 U.S. 184 (2002). Pub. L. No. 110-325, § 2, 122 Stat. 3553, 3559 (2008).

However, the Fifth Circuit has held, unambiguously, that the provisions of the ADAAA "do not apply retroactively." EEOC v. Agro Distrib., LLC, 555 F.3d 462, 469 n.8 (5th Cir. 2009) (quoting Rivers v. Roadway Express, Inc., 511 U.S. 298, 313 (1994) ("'Even when Congress intends to supersede a rule of law embodied in one of our decisions

---

[6] Counsel for Mr. Harvey asserts that this language embodies the true intent of the legislation, which should justify its application to cases such as the one before the Court. Although the former statement is viable, the latter is not, because neither this language, nor any other clause in the enactment sanctions retroactive application of the statute.

with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the 'corrective' amendment must clearly appear.'")). In accord, other district courts in our circuit have refused to apply the amendments to the ADA retroactively in cases decided after January 1, 2009, where the events giving rise to the cause of action occurred prior to the effective date of the legislation. See Moore v. Strain, No. 08-3913, 2009 WL 1565862, at *1, 3 (E.D. La. June 2, 2009); Picard v. St. Tammany Parish Hosp., 611 F. Supp. 2d 608, 610, 614 (E.D. La. 2009).

Likewise, in this case, the alleged acts of discrimination by Wal-Mart occurred during the term of Mr. Harvey's employment, which ended in 2006. The bulk of the events in dispute took place between 2005 and 2006, approximately three years prior to the effective date of the ADAAA. Considering these facts, and the clear precedent before the Court, arguments concerning the propriety of retroactively applying new legislation are essentially moot. Thus, as instructed by the Fifth Circuit, the Court will apply the law as it stood prior to the effective date of the ADAAA, both to this motion and to any further proceedings in this litigation.

## C.     Mr. Harvey's Federal and State Law Disability Discrimination Claims

1.     *Is Mr. Harvey "Disabled" Under the ADA?*

Wal-Mart first contends that Mr. Harvey cannot establish that he was, by definition, "disabled" under the ADA, which is a *prima facie* element of his disability discrimination claim. More specifically, Wal-Mart claims Mr. Harvey cannot prove that his supposed impairment substantially limited a major life activity, that he had a record of such an impairment, or that he was regarded by Wal-Mart as having such an

8

impairment, because the basic limitation imposed upon Mr. Harvey by his condition was a need to avoid standing for prolonged periods of time. This limitation, according to Wal-Mart, was insufficient to constitute a "disability" under the ADA.

Mr. Harvey argues in response that his degenerative arthritis constituted a disability under the ADA, because the condition impaired his ability to perform various major life activities such as lifting, bending, and standing,, and because these restrictions precluded him from participating in a broad class of jobs.

The ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (2005). In order to succeed on a disability discrimination claim under the ADA, a plaintiff must prove that "(1) he has a 'disability,' (2) he is 'qualified' for the position in which he seeks employment, and (3) he was 'discriminated' against solely because of his disability." Gonzales v. City of New Braunfels, 176 F.3d 834, 836 (5th Cir. 1999). Here, Wal-Mart takes issue with Mr. Harvey's claims primarily under the first element, although there is some discussion of the third element as well.

The term "disability" was given a three-pronged definition in the ADA:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Subsection (A) of this definition is the one principally at issue in this case, although, again, scant arguments were made by the parties as to the other elements of the definition.

Viewing subsection (A) at its component level, Mr. Harvey must establish that his degenerative arthritis constitutes a "physical . . . impairment," that "substantially limits" a "major life activity." Id. There is no contention that arthritic conditions may fairly be considered physical impairments. Moreover, Wal-Mart cannot seriously dispute that Mr. Harvey's condition affects, at least to some extent, major life activities.[7] According to Mr. Harvey's medical records, his degenerative arthritis prompted physicians to order various restrictions on his physical activities, including "no lifting greater than 25 pounds, no bending . . . avoid[] prolonged standing," and an allowance of "five minutes time off his feet each hour." (Doc. 44-8, pp. 10, 13). The Fifth Circuit has held that "while not specifically listed in the EEOC regulations, 'major life activities could include lifting, reaching, sitting, or standing.'" Jenkins v. Cleco Power LLC, 487 F.3d 309, 315 (5th Cir. 2007) (quoting Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 n.7 (5th Cir. 1995)). Working, moreover, is a well-recognized example of a major life activity. 29 C.F.R. § 1630.2(i). Clearly, the activities impacted by Mr. Harvey's condition constitute major life activities.

Finally, a "substantial limitation" as to a major life activity exists when the affected individual is either:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

---

[7] Counsel for Wal-Mart cites Coats v. Goodyear Tire & Rubber Co., No. 02-21286, 2003 WL 21145732, at *1 (5th Cir. Apr. 30, 2003) for the supposed proposition that lifting, pushing, and pulling are not major life activities. The opinion simply does not contain that proposition. Rather, the court held that certain restrictions imposed upon the plaintiff in the case caused by back problems did not amount to a substantial limitation on any major life activity. See id.

(ii)  Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

Id. § 1630.2(j)(1).  Courts should consider several factors in deciding whether a "substantial limitation" is present, including: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2).  This assessment must take place on an individualized basis, taking into account any mitigating measures employed by the plaintiff. Agro Distrib., 555 F.3d at 470.

In this case, Mr. Harvey's purported limitations stemmed only from the degenerative arthritis condition in his lower back.  Mr. Harvey's medical records reflect that he had suffered from pain in his lower back and right leg for at least two decades. (Doc. 44-8, p. 8).  Orthopaedic examinations conducted in 2003, a few months after his car accident, made clear that his condition necessitated a change in his job function at that point. (Doc. 44-8, p. 11).

Mr. Harvey's condition has been characterized by Mr. Harvey's his treating physicians as "a degenerative spine," "degenerative disc disease," and "degenerative arthritis." Early examinations following shortly after his car accident showed "extensive degenerative changes" to his lumbar spine. (Doc. 44-8, p. 14).  This condition prompted Mr. Harvey's orthopaedist to recommend the physical restrictions, which again included lifting more than 25 pounds, bending, "prolonged standing," and an allowance of five minutes of sitting time each hour. (Doc. 44-8, pp. 16-17).  This evidence indicates that

the "nature and severity of the impairment" are, at least, arguably, significant. See Agro Distrib., 555 F.3d at 470.

More recent testing (conducted after Mr. Harvey's retirement) revealed evidence of "congenital stenosis" affecting Mr. Harvey's spine, with significant narrowing of the space between certain discs in his lower back. Mr. Harvey continued to complain of pain in his back well after his retirement, and had undergone various testing and treatment methods, including an epidural steroid injection. (Doc. 44-8, p. 2, 5-7). This condition clearly affected his ability to work at Wal-Mart, both as a greeter and certainly as a maintenance worker. In sum, Mr. Harvey's degenerative arthritis condition seems, from the evidence presented, to have been a physical impairment from which he suffered years before he worked at Wal-Mart, and from which he will continue to suffer indefinitely. Therefore, Mr. Harvey's condition seems to find some support in the two temporal factors discussed above as well. See Agro Distrib., 555 F.3d at 470.

However, as Wal-Mart pointed out, the effects of Mr. Harvey's condition were not totally consistent; he was able to stand at work for more time than was recommended on some occasions, and less on others. (Doc. 39-4, pp. 30-31). As a greeter, Mr. Harvey was standing much more than he was sitting, and was able to avoid sitting for long periods of time in many instances. (Doc. 39-4, pp. 34-36).[8]

---

[8] Counsel for the defendant emphasized that Mr. Harvey picketed in front of Wal-Mart after he retired, carrying a large sign for 30-40 minutes, twice a day, during rush hour traffic. (Doc. 39-2, p. 4-5). This activity lasted for approximately 1 month. While the Court appreciates the import of this evidence, it is not sufficient to establish Wal-Mart's entitlement to summary judgment. Acknowledging that Mr. Harvey was not completely incapacitated, and was capable of picketing for consistent, although relatively short, periods of time, there still remains some dispute as to whether Mr. Harvey was disabled under the ADA.

The question presented by this motion is whether Mr. Harvey has pointed to sufficient evidence in the record to raise a genuine issue of material fact as to whether he is substantially limited in the major life activities of (1) lifting, bending, and standing; and (2) working. The term "substantial" is the key phrase in this analysis; it "precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." Toyota, 534 U.S. at 197. The United States Supreme Court has used the terms "'considerable'" or "'to a large degree'" to qualify the meaning of the word "substantial" as it was applied prior to the enactment of the ADAAA. See id. at 196.

Whether Mr. Harvey's limitations were "substantial" is a highly debatable proposition. The Fifth Circuit has interpreted this provision, in accord with the Supreme Court's guidance, with exacting narrowness, upholding the grant summary judgment against a plaintiff who suffered from "'degenerative disc disease and degenerative facet joint disease'" which prohibited prolonged periods of standing or sitting, but allowed the plaintiff to sit or stand in one place "for up to one hour at a time." Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc., 242 F.3d 610, 611, 614 (5th Cir. 2001). The plaintiff's ability to perform these major life activities was not, according to the court, "significantly restricted as compared with the average person." Id. at 614. In a similar decision, the Fifth Circuit affirmed summary judgment against another plaintiff who claimed that, because he suffered from "degenerative disc disease," he was "impaired in climbing stairs, walking, standing for longer than five minutes, sitting for longer than five minutes, with balance, and pain." Pegram v. Honeywell, Inc., 361 F.3d 272, 286 (5th

Cir. 2004). Evidence that the employee was to "sit or stand for hours at a time" led the court to conclude that the restrictions were not "substantial" under the ADA. See id.

Some caution is warranted, however, because other limitations, not completely distinguishable from Mr. Harvey's, have been found substantial. For instance, an employee whose leg fracture limited his ability "to sit for extended periods," which the evidence showed to be "up to three hours per day," was deemed disabled. Jenkins v. Cleco Power LLC, 487 F.3d 309, 315 (5th Cir. 2007). This limitation, the court found, was substantial because the plaintiff's "ability to sit [was] significantly more restricted than the average person." Id.

Overall, we must consider Mr. Harvey's condition not by its name, classification, or against the backdrop of the limitations imposed upon others WITH similar restrictions, but rather, by its adverse impact on his life. Sutton v. United Air Lines, 527 U.S. 471, 483 (1999). Here, although there is evidence that Mr. Harvey was able to stand for hours at a time, at least on some occasions, there is also evidence that he was compelled to sit more than once per hour on other occasions. His limitations were admittedly inconsistent, but arguably more restrictive than the limitations affecting the average person. Mr. Harvey's condition was likewise a longstanding, and seemingly permanent one.[9]

This "room for argument" provides Mr. Harvey with an exceptionally narrow window to avoid summary judgment. The Court's role at this stage is not to weigh the

---

[9] In order to be considered substantial, the limitations imposed upon an individual must be "'permanent or long-term.'" Toyota, 534 U.S. at 198. Mr. Harvey's lower back problems existed well before his employment at Wal-Mart, and persisted well after he retired.

merits of the plaintiff's claims; rather, it is to determine whether or not there is a genuine issue of material fact for trial. The Court is aware that "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment," but the plaintiff's evidence as to whether he was substantially limited by his condition exceeds a "scintilla." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994). Affording Mr. Harvey the benefit of any reasonable inferences, as we must, the Court is unable to conclude that summary judgment is appropriate as to whether he was "disabled" with regard to the major life activities of sitting, lifting, bending, and standing under the ADA. See Jenkins, 487 F.3d at 313-314.

Mr. Harvey also argues that he was substantially limited in the major life activity of working. The Supreme Court offered the following guidance for the analysis of a plaintiff's claims in this regard:

> When the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs. Reflecting this requirement, the EEOC uses a specialized definition of the term "substantially limits" when referring to the major life activity of working:
>
> "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."

Sutton, 527 U.S. at 491 (citations omitted). The Court has also indicated that the availability of a "host of different types of jobs" precludes a finding that the employee is substantially limited with regard to the major life activity of working. Id. at 492.

Once again, the Fifth Circuit's interpretation of this standard has been restrictive. For example, the court held that when an employee was precluded from participating in jobs that required "driving, climbing, and heavy lifting," he was not substantially limited in the major life activity of working. Bayless v. Orkin Exterminating Co., Inc., No. 02-50560, 2003 WL 21195495, at *4 (5th Cir. May 5, 2003). Similarly, the court found that an employee who suffered from "degenerative disc disease" was not disabled as to the major life activity of working, when "she was capable of bending at the knees, walking a half mile, lifting up to thirty pounds . . . driving a car for an hour. . . . [and] was also able to sit and stand for up to an hour at a time." Dupre, 242 F.3d at 614-15. Numerous other decisions indicate that a plaintiff's asserted inability to perform manual or heavy labor jobs is insufficient to establish a disability regarding the major life activity of working.[10]

In this case, Mr. Harvey contends that he is disabled "from the class of heavy labor jobs." (Doc. 44-1, p. 7). He offers no evidence of what types or classes of jobs the restrictions placed upon him would actually preclude, other than the use of this general term. He cites no case in which the Fifth Circuit (or any court, for that matter) has found such a general categorization sufficient to establish a disability. He has offered the Court no evidence of a statement from a medical practitioner of any kind which officially "disables" him from a broad class or range of jobs - merely restrictions on his ability to

---

[10] See, e.g., Collins v. Saia Motor Freight Lines, Inc., No. 04-30958, 2005 WL 1140777, at *2 (5th Cir. May 16, 2005) (restriction on plaintiff's ability to consistently lift heavy weight was insufficient to establish a disability under the ADA); Watkins v. Roadway Express Inc., 273 F.3d 1094, 1094 (5th Cir. 2001) (heavy lifting restriction limited plaintiff only with regard to "at most a 'narrow range of jobs'") (quoting Sherrod v. Am. Airlines, 132 F.3d 1112, 1120 (5th Cir. 1998); Eldridge v. Am. Residential Svcs. L.L.C., No. 3:04-CV-2073-D, 2006 WL 2035654, at *5 (N.D. Tex. July 19, 2006) (plaintiff's medical restrictions on "lifting, kneeling, stooping, bending, or working on his knees for an extended period of time" did not limit plaintiff as to a broad class of jobs).

lift, bend, reach, and stand. To the contrary, Mr. Harvey was able to find employment after retiring from Wal-Mart as a pizza delivery driver. The Court can conceive of a number of other classes of jobs, such as clerical or driving-related positions, which would not be affected by Mr. Harvey's physical limitations.

Given the narrow interpretations of the Fifth Circuit surrounding this particular major life activity, and the lack of specific evidence regarding a class of jobs from which the plaintiff is precluded by his physical condition, the Court finds that Wal-Mart is entitled to summary judgment as to this specific issue: Mr. Harvey is not substantially limited by his degenerative arthritis with regard to the major life activity of working.

2.     *Was Mr. Harvey "Regarded as" Disabled?*

Mr. Harvey also asserted that Wal-Mart regarded him as disabled. The Court notes at the outset of this discussion that the arguments as to this point are highly underdeveloped. Nonetheless, because some evidence regarding Wal-Mart's perception of Mr. Harvey's condition has been brought to the Court's attention, we will consider this issue briefly.

Under the ADA, the definition of the term "disability" includes "being regarded as having such an impairment [that substantially limits one or more of the major life activities of such individual]." 42 U.S.C. § 12102(2)(A), (C). "A plaintiff has a 'regarded as' disability if he (1) has an impairment that is not substantially limiting but which the employer perceives as substantially limiting, (2) has an impairment that is substantially limiting only because of the attitudes of others, or (3) has no impairment but is perceived by the employer as having a substantially limiting impairment." Waldrip v. Gen. Elec.

Co., 325 F.3d 652, 657 (5th Cir. 2003) (citing Gowesky v. Singing River Hosp. Sys., 321 F.3d 503 (5th Cir.2003)). The statements and actions of an employer's supervisors with decision-making power can be probative in determining whether an employer regarded an employee as being disabled. Rodriguez v. ConAgra Grocery Prods. Co., 436 F.3d 468, 476-77 (5th Cir. 2006) (relying upon statements of an employer's "decisionmaker" in deciding whether or not the employer regarded the plaintiff as disabled).

In this case, Mr. Harvey asserts that, because he documented his condition with Wal-Mart supervisors, and had been granted accommodations in the past based upon that documentation, Wal-Mart regarded him as disabled. Wal-Mart characterizes this argument as a "red herring" which was asserted by Mr. Harvey "half-heartedly," and claims there is no evidence that Mr. Harvey's supervisor, Mr. Pryor, regarded him as disabled. (Doc. 49, p. 4. n.13).

The Court frankly agrees with Wal-Mart that Mr. Harvey's argument on this point was "half-hearted." The Court also understands the Fifth Circuit's position with regard to this standard to be as follows: "Under the 'regarded as' prong, the disability status of the plaintiff turns not on the plaintiff's physical condition, but rather on how the plaintiff was perceived and treated by those individuals alleged to have taken discriminatory action." Deas v. River West, L.P., 152 F.3d 471, 476 n.9 (5th Cir. 1998).

However, the Court cannot agree, at this stage of the argument's rather slow evolution, that there is no genuine issue of material fact as to whether Mr. Pryor regarded the plaintiff as disabled. Evidence before the Court indicates that Wal-Mart had long been aware of Mr. Harvey's medical condition. In fact, Wal-Mart had received

documentary proof that his condition imposed certain physical restrictions upon him, and had granted Mr. Harvey an accommodation which addressed those physical restrictions.

Perhaps more interestingly, Mr. Pryor demanded that Mr. Harvey submit an "ADA Reasonable Accommodation Package" when Mr. Harvey approached him about the accommodation granted to him by the previous supervisor, Mr. Polk. This was done because, according to Mr. Pryor's deposition testimony, when he received notice of Mr. Harvey's original accommodation, "[t]hey said it probably wasn't on an ADA form." (Doc. 44-5, p. 29).

Ultimately, the Court finds that a genuine issue of material fact exists as to whether Mr. Pryor, the supervisor alleged to have discriminated against Mr. Harvey, regarded Mr. Harvey as being disabled under the ADA.

3.    *Did Wal-Mart Discriminate Against Mr. Harvey?*

Wal-Mart's also claims that no adverse employment action was taken against Mr. Harvey, because he chose to retire, and was neither terminated nor forced, in any way, to resign or retire. Mr. Harvey contends that he was nonetheless denied a reasonable accommodation, and was compelled to retire due to his discomfort with standing up at work, which caused him significant pain.

The ADA's definition of discrimination includes "not making reasonable accommodations to the known physical or mental limitations" of a disabled employee. 42 U.S.C. § 12112(b)(5)(A). This provision imposes upon an employer the affirmative duty to provide a reasonable accommodation to disabled employees "in regard to job

19

application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Id. § 12112(a).

Wal-Mart argues that Mr. Harvey has failed to provide evidence that he suffered an "adverse [employment] action" as to a term or condition of his employment. (Doc. 39-2, p. 8, n.11). In support of this contention, Wal-Mart emphasizes that Mr. Harvey's employment ended due to his decision to retire, and that he failed to utilize Wal-Mart's "open door policy" to obtain a final decision regarding his desired accommodations. These arguments, however, misconstrue the relevant consideration under a failure to accommodate claim under the ADA. However, an individual does not have to be summarily terminated in order to establish that he or she was the target of discrimination. As the above statutory language emphasizes, actionable discrimination includes a failure to provide a reasonable accommodation. See 42 U.S.C. § 12112(b)(5)(A). The focus of this inquiry is on the presence of an accommodation that is "sufficient to meet the job-related needs of the individual being accommodated." Agro, 555 F.3d at 470 (quoting 29 C.F.R. § 1630, App., § 1630.9). The denial of such a reasonable accommodation is, in and of itself, proscribed activity:

> It is unlawful for a covered entity not to make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business.

29 C.F.R. § 1630.9.[11]

---

[11] The parties have offered no arguments as to whether the accommodations requested by Mr. Harvey were reasonable.

Moreover, the Fifth Circuit has recognized the importance of focusing upon an employer's failure to accommodate a disability, rather than whether an employee suffered an "adverse employment action." See, e.g., Bridges v. Dept. of Social Servs., No. 00-30804, 2001 WL 502797, at *1 (5th Cir. Apr. 27, 2001) (holding that "[a]lthough [the plaintiff] has suffered no adverse employment action, she may still raise a claim of discrimination based on the alleged failure reasonably to accommodate her disability"). Relying upon the court's reasoning in Bridges, another district court in our circuit recently held that "[b]ecause the failure to reasonably accommodate an employee's disability is, by definition, a failure to provide that employee with an equal employment opportunity, the Court holds that it is unnecessary to prove a separate 'adverse employment action' element in a failure to accommodate case." Picard, 611 F. Supp. 2d at 620. In that case, the plaintiff, a hospital transcriptionist who suffered from carpal tunnel syndrome and Charcot-Marie-Tooth disease, resigned after being denied the use of voice-recognition software by her employer. Id. at 610-12. The Court finds that these decisions accurately interpret the definition of the term "discriminate" in the ADA. Thus, if Mr. Harvey can raise a genuine issue of material fact as to whether he was denied a reasonable accommodation, the defendant's motion for summary judgment should be denied.

Although much of the onus rests with the employer under these provisions, Mr. Harvey, as an employee, bore a concomitant duty as well. Employees are responsible for making employers aware of any disabilities that they may have and the limitations arising from them, and to request reasonable accommodations. See Seaman v. CSPH,

Inc., 179 F.3d 297, 300 (5th Cir.1999) ("Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also of the physical or mental limitations resulting therefrom."). Indeed, the statutory language proscribing an employer's failure to accommodate includes only the "*known* physical or mental limitations" of a disabled employee. 42 U.S.C. § 12112(b)(5)(A) (emphasis added).

In this case, Mr. Harvey provided Wal-Mart with two notes from physicians describing the physical limitations of his condition. As a result of these notes, Mr. Harvey was allowed to sit while working if it became necessary for him to do so, and was no longer required to participate in duties that required bending and heavy lifting. Thus, Wal-Mart was well aware of the limitations arising from Mr. Harvey's physical condition. In addition, Mr. Harvey again requested permission to sit while working after being denied permission to do so following his second leave of absence. (Doc. 44-9, p. 5). Therefore, Mr. Harvey has offered evidence which tends to show that he notified his employer of the limitations imposed upon him by his degenerative arthritis condition, and of requested a reasonable accommodation.

Wal-Mart's arguments are further deficient because they ignore Mr. Harvey's documented attempts to remedy the problem regarding his accommodation before retiring. Mr. Harvey did, indeed, choose to retire in April of 2006. However, Mr. Harvey was clear in his deposition testimony that, if his accommodation had been approved by Wal-Mart, he would not have chosen to retire. (Doc. 39-4, pp. 37-39). Mr. Harvey's Exit

Interview also evidences this point: the "Detailed Statement of Termination" section states that Mr. Harvey retired because "[h]e couldn't stand for long period [sic] of time without causing him severe pain." (Doc. 44-10, p. 2).

Wal-Mart counters that a final decision as to whether to grant Mr. Harvey an accommodation had not been reached at the time that Mr. Harvey chose to retire. However, at the time that his request was submitted, Mr. Harvey's new manager, Mr. Pryor, was aware that a prior accommodation had been granted. (Doc. 44-5, p. 28). Mr. Pryor reviewed Mr. Harvey's personnel file, which contained records of his degenerative arthritis condition and the restrictions placed upon him. Mr. Pryor suggested to Mr. Harvey that he return to the doctor to update his file and to fill out an "ADA Accommodation Package," but also stated that ADA accommodations were not required to be updated after 90 days (unlike, according to Mr. Pryor, workers' compensation accommodations). Meanwhile, there was a period of some months during which Mr. Harvey was not allowed to sit while at work, and as a result, was forced to work while in substantial pain. Although Mr. Harvey admitted that Mr. Pryor was "still handling" his request, Mr. Harvey has submitted enough evidence to indicate that he may have been unlawfully denied a prior-approved reasonable accommodation, at least for some period of time. A right of action may have arises upon that original denial.

This Court holds that Mr. Harvey need not have been terminated, demoted, or otherwise subjected to ridicule or harassment in order to state a viable discrimination claim under the ADA. Rather, he must merely raise a genuine issue of material fact as to whether Wal-Mart did not provide a reasonable accommodation regarding his alleged

disability. Although the evidence before the Court rests, once again, on very narrow footing, it is sufficient to survive the defendant's motion for summary judgment.

**D.    Mr. Harvey's FMLA Claim**

Mr. Harvey asserts that he is entitled to recover damages and back pay under the FMLA, because Wal-Mart failed to timely restore him to his position following his second leave of absence in December 2005. Wal-Mart argues in response that it is entitled to summary judgment dismissing Mr. Harvey's FMLA claims for two reasons. First, Mr. Harvey did not work a sufficient number of hours during the twelve-month period prior to his second leave of absence to qualify as an "eligible employee" under the FMLA. Second, Wal-Mart maintains that the justification for Mr. Harvey's September 2005 leave of absence, to care for his ill daughter and her children, was not a qualifying reason for such a leave under the FMLA, again excepting Mr. Harvey from the protections of the statute.

By contrast, Mr. Harvey claims that genuine issues of fact remain as to Wal-Mart's alleged violations of the FMLA. Remaining in dispute, according to Mr. Harvey, are the proper method and end result of calculating the hours worked by Mr. Harvey prior to his September 2005 leave of absence, and whether Wal-Mart should be equitably estopped from asserting a defense of non-coverage.

1.    *Equitable Estoppel*

We must begin our analysis with the issue of estoppel, as Mr. Harvey's argument here would preclude further discussion of many of the arguments contained in the

parties' filings. Mr. Harvey contends that Wal-Mart designated his second leave of absence as FMLA-qualifying leave, and that as a result of this misrepresentation, it should be equitably estopped from denying that he was an "eligible employee." Wal-Mart challenges the viability of applying estoppel in this context, and specifically argues that, because Mr. Harvey was unaware of his rights under the FMLA until he returned from his second leave of absence, he cannot now claim that he relied upon any representations by Wal-Mart to his detriment. Therefore, Wal-Mart claims, the doctrine of equitable estoppel should not be used to salvage Mr. Harvey's otherwise unsupportable FMLA claim.

The decisive point here is not whether Wal-Mart's policy provided more generous amounts of leave than required under the FMLA. That issue was made effectively moot by the Fifth Circuit's decision that, although an employer's "policies are more generous in defining employee eligibility for FMLA protections, they do not create an FMLA cause of action." Dolese v. Office Depot, Inc., 231 F.3d 202, 202 (5th Cir. 2000). Rather, the issue is whether Wal-Mart's representation that Mr. Harvey's second leave of absence fell under the FMLA warrants the application of equitable estoppel in this case.

The definition and elements of estoppel, as adopted by the Supreme Court, are as follows:

> "If one person makes a definite misrepresentation of fact to another person having reason to believe that the other will rely upon it and the other in reasonable reliance upon it does an act . . . the first person is not entitled . . . (b) to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired."

<u>Heckler v. Cmty. Health Servs. of Crawford County, Inc.</u>, 467 U.S. 51, 59 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979)). The Fifth Circuit explicitly held that the doctrine of equitable estoppel is applicable to claims under the FMLA:

> [A]n employer who without intent to deceive makes a definite but erroneous representation to his employee that she is an "eligible employee" and entitled to leave under FMLA, and has reason to believe that the employee will rely upon it, may be estopped to assert a defense of non-coverage, if the employee reasonably relies on that representation and takes action thereon to her detriment.

<u>Minard v. ITC Deltacom Commc'ns, Inc.</u>, 447 F.3d 352, 359 (5th Cir. 2006). In a subsequent opinion, the court interpreted its decision in <u>Minard</u> to imply the following requirement: "the defendant-employer must have *actually represented to the plaintiff-employee that her leave was covered and/or that she was protected by the FMLA* in order to equitably estop the defendant from arguing in court that the FMLA does not specifically cover the plaintiff-employee and/or her leave." <u>Ford-Evans v. United Space Alliance LLC</u>, No. 08-20033, 2009 WL 1344945, at *5 (5th Cir. May 14, 2009) (emphasis added).

In this case, there was, in fact, a designation on the "Request For Leave of Absence" form completed by Mr. Harvey, and approved by a supervisor, indicating that his second leave of absence was "counted as leave pursuant to the FMLA." (Doc. 44-11, p. 4). This designation, which is clearly printed on the bottom of the form and referenced by an asterisk, would suffice to constitute a "representation" in the general sense of that term. However, the Court finds that this language does not support Mr. Harvey's equitable estoppel argument, for a number of reasons.

First, Mr. Harvey rather candidly admitted that he was largely unaware of his supposed rights under the FMLA when he took his second leave of absence. Indeed, Mr. Harvey was *not* aware that his second leave of absence was classified as FMLA-protected until he reviewed the FMLA guidelines *after returning from his second leave of absence.* (Doc. 39-4, pp. 25-26). To the contrary, when asked during his deposition whether he understood that his second leave of absence was covered under the FMLA, Mr. Harvey responded: "I didn't know it. I do now, because it's under it, but I didn't know at that time." (Doc. 39-3, p. 26). It is thus logical to assume that Mr. Harvey did not read the printed designation at the time that his request for the second leave of absence was approved, and there is no evidence that he became aware of it by any other means. Thus, there seems to be no dispute that Mr. Harvey did not rely upon any representation made by Wal-Mart, in deciding to take his second leave of absence.[12]

This is a critical issue, because reliance upon a representation is an absolute and consistent requirement of equitable estoppel. The Fifth Circuit was clear on this point in applying the doctrine to FMLA claims:

> The [Supreme] Court explained that the party claiming the estoppel must have relied on its adversary's conduct " 'in such a manner as to change his position for the worse.'" And, according to the Court, that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

---

[12] While the Court is aware that Mr. Harvey may have changed his plans before taking that second leave of absence if he had known of the FMLA implications of the leave. However, this issue is not controlling. Mr. Harvey was given no false assurance, rooted in the FMLA or otherwise, that he would be entitled to *anything at all* upon returning from his second leave of absence. The lack of such an assurance *is controlling* in the determination of whether equitable estoppel applies.

Minard, 447 F.3d at 358 (quoting Heckler, 467 U.S. at 59). The cases cited by the parties reflect the requirement as well. In Minard, for instance, the plaintiff's requested medical leave was approved by a memorandum from her employer which specifically stated that she was an "eligible employee" and that she was entitled to 12 weeks of protected leave under the FMLA. See id. at 354. This representation by the plaintiff's employer justified the court's application of estoppel. See id. Conversely, in Ford-Evans, the court denied a plaintiff's equitable estoppel claim "because [the employer] did not make any representations to [the plaintiff] that her leave was protected by FMLA during the time of the relevant events at issue." See 2009 WL 1344945, at *5. Without evidence of such a representation by a Wal-Mart supervisor, and with Mr. Harvey's admission that he was unaware of the designation on his leave of absence form, the notion that Mr. Harvey relied to his detriment upon any position taken by Wal-Mart as to his rights under the FMLA is unsupported.

In addition, even if we were to assume that Mr. Harvey did have some knowledge which would support estoppel, the representation contained in the leave of absence approval form was not that Mr. Harvey was an "eligible employee" under the FMLA, as was the case in Minard. 447 F.3d at 354. Rather, it was a general statement that the selected category of leave, which in this case was leave to care for an ill family member, was "counted as leave pursuant to the FMLA."[13] (Doc. 44-11, p. 4). Although the form was approved by a Wal-Mart supervisor, this designation was pre-printed, not added

_____

[13] The emphasis here must be the distinction between the terms "counted as" and "covered by." Although this type of leave may have been designated as falling within a broad category under the FMLA, there is no representation that Mr. Harvey was, himself, covered.

by the approving supervisor. Moreover, Mr. Harvey has not offered evidence which would tend to show that Wal-Mart made any other representation to him regarding his rights (or lack thereof) under the FMLA prior to taking his second leave of absence.

Had there been such a representation, or had Mr. Harvey relied in any way upon the designation in the leave of absence form prior to taking his second leave of absence, the Court's decision may have been different. However, after carefully reviewing the record as it stands, the Court finds that there is no genuine issue of material fact as to whether Wal-Mart should be equitably estopped from asserting a defense of non-coverage under the FMLA.

2.    *Retaliation*

Mr. Harvey also asserts that Wal-Mart retaliated against him because he attempted to exercise his rights under the FMLA. The Fifth Circuit has offered the following guidance regarding retaliation claims under the FMLA:

> In order to establish a prima facie case of retaliation under the FMLA, the employee must show the following: 1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA.

Mauder v. Metro. Transit Auth., 446 F.3d 574, 583 (5th Cir. 2006); accord. Powers v. Woodlands Religious Cmty. Inc., No. 08-40709, 2009 WL 938938, at *1 (5th Cir. Apr. 8, 2009). The plaintiff need not prove that the exercise of FMLA rights was the sole cause of the unfavorable treatment; "[t]he plaintiff is, however, required to show that the protected activity and the adverse employment action are not completely unrelated." Mauder, 446 F.3d at 583.

In this case, Mr. Harvey asserts that the causal connection between his exercise of FMLA rights and the adverse employment action taken against him (the decision to renew investigation into his disability accommodation) was temporal. Basically, he asserts that because he attempted to recover back pay under the FMLA, Mr. Pryor, his manager, decided to review his personnel file and demand that he update the information supporting his accommodation requests. Mr. Harvey points to no evidence whatsoever in the record, and makes no inferential reference to any such evidence, which would reasonably indicate that the two events were related in any way. His bare assertion that "one thing led to the other" is insufficient to raise a genuine issue of material fact for trial. Therefore, Wal-Mart is entitled to summary judgment on Mr. Harvey's retaliation claim.

3. *The FMLA and Failure to Notify Claims*

Finally, we may return to Wal-Mart's argument that Mr. Harvey was not an "eligible employee" under the FMLA, and therefore, was never entitled to enjoy the protections of the statute. Specifically, the defendant claims that Mr. Harvey did not work the requisite number of hours in the twelve month period prior to taking his second leave of absence. Aside from the arguments regarding equitable estoppel discussed above, Mr. Harvey attempts to raise a genuine issue of material fact regarding the accuracy of Wal-Mart's payroll records, which clearly indicate that he had not worked the requisite number of hours. This he has failed to do.

One of the stated purposes of the FMLA is "to entitle employees to take reasonable leave for medical reasons . . . and for the care of a child . . . who has a serious

health condition." 29 U.S.C. § 2601(b)(2). However, there are essential prerequisites that an employee must satisfy in order to reap the benefits of this entitlement. To be protected by the provision of the FMLA, or in other words, to be considered an "eligible employee," an employee must have "been employed . . . (i) for at least 12 months by the employer with respect to whom leave is requested under section 102 [29 USCS § 2612]; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A).[14] If an employee fails to satisfy these threshold requirements, then the employee does not, by definition, fall within the protective umbrella of the statute, and further discussion of his "rights" under the FMLA is therefore moot.

Accordingly, Mr. Harvey has gone to significant effort to establish a triable fact issue regarding the accuracy of his pay records. We will analyze each of Mr. Harvey's contentions, bearing in mind that "mere conclusory allegations . . . are insufficient . . . to defeat a motion for summary judgment." Eason, 73 F.3d at 1325.

First, Mr. Harvey claims that Wal-Mart's payroll records reflect 263.19 hours of paid leave in 2004, which is not counted for purposes of determining an employee's eligibility under the FMLA. This calculation, Mr. Harvey contends, is inaccurate, because Mr. Harvey did not formally request leave during that year, but rather only requested a reduction of the number of days that he worked per week. While it is true that Mr. Harvey's Request for Leave of Absence form does specify that he wished to

---

[14] While Mr. Harvey does raise some argument as to Wal-Mart's failure to notify him as to which method of calculating the preceding 12-month period would be used, this point appears to be irrelevant. There does not appear to be a 12-month period, by any measure, during which Mr. Harvey would have qualified under the statute.

work only two days a week, this does not repudiate the explanation of the 263.19 hour figure offered by Wal-Mart. (Doc. 57-10, pp. 30-32, 57-59). Each category of paid leave is broken down, calculated, and accounted for. Mr. Harvey's bald assertion that the records are "implausible" is plainly insufficient to draw the uncontested documents submitted by Wal-Mart into serious dispute.

Mr. Harvey next contends that the Wal-Mart official who gave the deposition testimony explaining Mr. Harvey's employment records, Mr. Robert Davis ("Mr. Davis"), did not have any personal knowledge of the accuracy of those records. It is true that Mr. Davis clearly stated during his deposition that he was not personally involved in any decisions involving Mr. Harvey's employment. (Doc. 57-10, p. 12). However, he also stated that he reviewed Mr. Harvey's employment records in preparation for his deposition testimony. Mr. Harvey has offered no evidence which would indicate that his review of those records was in any way tainted, flawed, or otherwise unreliable. Mr. Davis's role was to explain the records, not to authenticate them. Mr. Harvey has not offered any evidence which would contradict the information contained in those records, and explained by Mr. Davis. Therefore, Mr. Harvey again fails to raise a genuine issue of material fact here.

Furthermore, Mr. Harvey uses calculations based upon Wal-Mart's sick leave and Illness Protect Plan policies in an attempt to illustrate the possible inaccuracy of Wal-Mart's payroll records in a general sense. However, these calculations simply fail to draw the payroll records offered by Wal-Mart into question. Once again, Mr. Davis's deposition testimony, which explained the figures in some detail, is uncontroverted. Mr.

Harvey has also presented no credible documentary or testimonial evidence which would draw these figures into question with regard to his own payroll records, and no such evidence relates to the other categories of paid leave counted against Mr. Harvey, such as holiday or personal time. Mr. Harvey challenges Wal-Mart's broad categorization of several categories of paid leave under one term, "OTH." But again, the various subclasses of this broad category were explained, and remain unchallenged. No genuine issue of material fact is presented by these arguments.

Finally, Mr. Harvey claims that the records should generally be considered inaccurate, because of some perceived irregularities between Mr. Harvey's earnings report for the year 2002 and the payroll records for that year. This argument, however, is irrelevant at the outset because it does not relate to a term of employment relevant to Mr. Harvey's FMLA claim in this case.

In sum, Mr. Harvey has failed to offer a single piece of evidence which tends to show that he actually worked any number of hours for which Wal-Mart did not credit him. No pay stubs, receipts, or even testimony is referred to which would contradict, in a direct manner, the payroll records offered by Wal-Mart. The problem with Mr. Harvey's contentions here is perhaps best encapsulated by a statement in his own pleadings, when counsel for Mr. Harvey asserts that "it is highly unlikely and implausible . . . that Mr. Harvey could have accrued or taken the amount of leave with which he was credited." (Doc. 59-1, p. 9). No evidence is offered by Mr. Harvey of what he did or did not accrue, only this statement. This is precisely the type of unsupported and conclusory allegation that is insufficient to survive summary judgment. See <u>Eason</u>, 73 F.3d at 1325.

In light of the foregoing analysis, the Court finds that there is no genuine issue of material fact as to whether Mr. Harvey worked the requisite number of hours required to qualify as an "eligible employee" under the FMLA. This conclusion renders moot any further discussion of Mr. Harvey's rights under the FMLA - by definition, at the time that he took the disputed leave of absence, he had no such rights.[15]

## III. Conclusion

For the reasons described above, the Court finds that the defendant's Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART.

A judgment in accord with this ruling will issue separately.

SIGNED on this _30th_ day of September, 2009 at Alexandria, Louisiana.


DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

[15] Mr. Harvey's claim that Wal-Mart failed in its duty to advise him of his rights under the FMLA. The Court agrees that recovery under the FMLA is appropriate when an employer's "noncompliance with the individualized notice regulations impaired [the plaintiff's] ability to exercise her rights under the FMLA and thereby caused her prejudice." Downey v. Strain, 510 F.3d 534, 542 (5th Cir. 2007). However, even if there was such an interference, Mr. Harvey had no rights under the FMLA with which to interfere, and thus, he cannot recover under this theory.